UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re:** <br><br> **VICTOR MONDELLI** <br><br> **VICTOR MONDELLI**, *et al.*, <br><br>    Appellants, <br><br> v. <br><br> **NICHOLAS J. DELZOTTI, Chapter 7 Trustee**, *et al.*, <br><br>    Appellees. | Civ. No. 10-3393-WJM <br><br><br> OPINION <br><br> HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Appellant-Debtor Victor Mondelli ("Mondelli") appeals eleven bankruptcy court orders entered between February 7, 2005 and March 15, 2010. Anna Mondelli, a purported intervener, joins in the appeal (collectively the "Mondellis"). Chapter 7 Trustee-Appellee Nicholas Delzotti (the "Trustee" or the "Chapter 7 Trustee") and Appellees Jack Silverman Realty & Mortgage, LLC ("JSRM") and Berkeley Realty Partners 244, LLC ("BRP") (collectively "Appellees") move to dismiss the appeal. Also before the Court is BRP and JSRM's motion for sanctions under Federal Rule of Civil Procedure 11 against the Mondellis' current attorney, Kenneth Rosellini, and the law firm Hallock & Cammarota, LLP, ("H&C") and its partners, Joseph A. Hallock and Pietro Cammarota, filed by BRP and JSRM (the "Rule 11 Motion").

      For the reasons stated below, both motions are **GRANTED**.

    **I.**    **Factual and Procedural Background**

      Mondelli voluntarily filed for Chapter 13 bankruptcy on February 18, 2004 in the United State Bankruptcy Court for the District of New Jersey. At the time of the filing, Mondelli was represented by counsel. *Id.* On June 4, 2004, Mondelli terminated his counsel and proceeded *pro se*. He then requested that the case be

1

dismissed; as an alternative to dismissal, the Chapter 13 Trustee recommended that the case be converted to Chapter 7, as Mondelli possessed equity in real estate that could cover all outstanding claims by creditors. After a hearing on the matter at which Mondelli failed to appear, the Bankruptcy Court converted the case to Chapter 7 on October 21, 2004. The Chapter 13 Trustee was thereafter replaced by the Chapter 7 Trustee.

On January 4, 2005, Mondelli obtained new counsel, Herbert Levenson, and moved to reconvert the case to Chapter 13, arguing that illness had prevented him from attending the hearing and that he was psychologically unfit to proceed *pro se*. In support of his motion, Mondelli included a letter from Stephen Grelecki, M.D., a psychiatrist who stated Mondelli was "under his care" and "should not be expected by the courts to represent himself." The Bankruptcy Court ordered the reconversion on February 7, 2005, subject to certain conditions including that Mondelli would complete and abide by an eventual Chapter 13 plan. The Bankruptcy Court then terminated the Chapter 7 Trustee, reappointed the Chapter 13 Trustee, and allowed the Chapter 7 Trustee claims for compensation and attorney's fees.

The Bankruptcy Court confirmed the Chapter 13 Plan (the "Plan") on February 3, 2006. The order confirming the Plan required that Mondelli refinance his real estate holdings within twelve months of the confirmation hearing or the case would be dismissed. On February 9, 2007, the Chapter 13 Trustee moved to vacate the February 7, 2005 order reconverting the case to Chapter 13 on the grounds that Mondelli had failed to abide by the conditions of the plan including that he failed to refinance his real estate holdings. On February 21, 2007, the Bankruptcy Court vacated the February 7, 2005 order and converted the case back to Chapter 7. The Chapter 13 Trustee was thereafter terminated and the Chapter 7 Trustee was reappointed. Mondelli promptly appealed. This Court ultimately affirmed the Bankruptcy Court's decision. *See Mondelli v. Greenberg*, No. 07-CV-3290, 2007 WL 4365310 (D.N.J. Dec. 12, 2007).

On May 15, 2007, the Bankruptcy Court authorized Mondelli to obtain a mortgage on real property he owned consisting of two commercial properties and one residential property from JSRM to allow Mondelli to pay off his creditors. On May 16, 2007, the Bankruptcy Court entered a consent order authorizing Mondelli to enter into a ground lease with BRP for one of the commercial properties once Mondelli closed the financing with JSRM. On May 21, 2007 while the appeal of the February 7, 2005 order was pending, Mondelli again obtained new counsel, finally settling on Rosellini, his present counsel. On June 27, 2007, the Bankruptcy Court entered another consent order authorizing Mondelli to enter into a ground lease with BRP for the other commercial property. Although Rosellini had

appeared in the action by this time, Mondelli's previous attorney, Herbert Levenson, signed the June 27, 2007 consent order on Mondelli's behalf. *Id.*

On November 10, 2007, JSRM and BRP moved to enforce the consent orders, arguing that Mondelli had failed to comply with his obligations under the loan agreement as ordered by the court. On November 19, 2007, the Bankruptcy Court ordered Mondelli to comply with the loan agreements. Mondelli, through Rosellini, moved the Bankruptcy Court to reconsider the motion enforcing the loan agreements, raising four new arguments that it had not previously raised. The Bankruptcy Court denied both motions, and Mondelli, again acting through Rosellini, promptly appealed. The appeal was again assigned to this Court, and a full explanation of the appeal and coordinate facts can be found in the Court's opinion. *See Mondelli v. Berkeley Realty Partners No. 224, LLC*, No. 08-CV-1582, 2008 WL 3843268 (D.N.J. Aug. 14, 2008) *aff'd* 349 F. App'x 731 (3d Cir. Oct. 20, 2009). In short, this Court dismissed Mondelli's appeal, calling it "without merit." *See id.*

On May 7, 2008, the Bankruptcy Court granted an interim application for compensation by the law firm that had provided legal services for the Chapter 7 Trustee. Mondelli filed an interlocutory appeal without seeking leave of the Court, and this Court dismissed it for that reason. *Mondelli v. Delzotti*, No. 07-CV-5840 (D.N.J. May 2, 2008). On January 7, 2009, the Bankruptcy Court granted the "third and final" application for compensation for attorneys' fees for the Chapter 7 Trustee's attorneys. Mondelli, through Rosellini, promptly appealed. But it does not appear that Mondelli prosecuted the appeal.

On September 4, 2009, the Chapter 7 Trustee filed his final report and application for compensation. Rosellini filed objections on behalf of both Mondellis, and Anna Mondelli formally appeared in the bankruptcy case. On October 21, 2009, the Bankruptcy Court granted the Chapter 7 Trustee's final report and application for fees and expenses.

On March 12, 2010, the Chapter 7 Trustee filed his final account, certified that the bankruptcy estate had been fully administered, and applied to be discharged. On March 15, 2010, the Bankruptcy Court entered its Final Decree, finding that the estate had been fully administered and ordering that the Chapter 7 Trustee was discharged, the bond was canceled, and that the bankruptcy case was closed.

On March 29, 2010, the Mondellis, through Rosellini, filed the instant appeal.

## II.     The Motion to Dismiss

The Appellees move to dismiss the appeal on several grounds, including that the appeal is untimely and that the Mondellis lack standing to bring the appeal. Because these first two arguments are sufficient to find that dismissal is proper, the Court will not consider Appellees' remaining arguments.

### A. The Timeliness of the Appeal

The Appellees argue that the appeal is untimely, and they are, for the most part, correct. A district court has jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees of bankruptcy judges. 28 U.S.C. § 158(a). Under Federal Rule of Bankruptcy Procedure 8002, a party has fourteen days from the date that an order is entered into the docket to file a notice of appeal.[1] This rule is jurisdictional in nature: if the party fails to file a notice within the time allowed, the district court lacks subject matter jurisdiction to hear the appeal. *In re Taylor*, 343 F. App'x 753, 755 & n.1 (3d Cir. 2009) (citing *Shareholders v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir. 1997)).

The Mondellis filed the instant notice of appeal with the Bankruptcy Court on March 29, 2010. They indicated eleven orders – spanning the entirety of the bankruptcy case – that they wish to appeal. As the Mondellis characterized them in their notice of appeal, these orders are:
- February 7, 2005 Order Converting Case to Chapter 13;
- February 15, 2005 Amendment to Order Converting Case to Chapter 13;
- April 6, 2005 Order Granting Compensation to Trustee;
- April 20, 2005 Order Granting Compensation to Trustee;
- May 15, 2007 Consent Order Authorizing Ground Lease;
- May 16, 2007 Consent Order Authorizing Ground Lease;
- October 17, 2007 Order Granting Attorneys' Fees for Trustee;
- May 7, 2008 Order Granting Attorneys' Fees for Trustee;
- January 7, 2009 Order Granting Attorneys' Fees for Trustee;
- October 21, 2009 Order Granting Trustee Fees and Expenses; and
- March 15, 2010 Final Decree.

Ten of the eleven orders appealed from were entered far more than fourteen days prior to March 29, 2010, with the most recent order being decided in October of 2009. Only the appeal of the Final Decree docketed on March 15, 2010 – exactly

---

[1] Prior to the rule amendments that became effective in 2009, a party had ten days to file such notice, although the manner of computing time differed.

4

fourteen days before Mondelli filed his notice of appeal – was timely. Appellees argue that the appeal of the Final Decree is also untimely, but their argument is merely conclusory, and they offer no support for it.

As illustrated by the history of this case, Mondelli and Rosellini are no strangers to the appeals process in bankruptcy matters. The Mondellis must assume – or hope – that because their appeal of the Final Decree is timely somehow all the previously decided orders in the case may be appealed in one fell swoop. They are wrong. As the Third Circuit has repeatedly emphasized, the uniquely complex and protracted nature of bankruptcy proceedings requires that parties to such proceedings appeal the bankruptcy court's decisions within mere days after they are final rather than waiting for the entire bankruptcy case to be closed. *See, e.g., In re Owens Corning*, 419 F.3d 195, 203 (3d Cir. 2005); *In re Professional Ins. Management*, 285 F.3d 268, 279 (3d Cir. 2002); *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985). The "antipathy toward piecemeal appeals" that prevails in individual adversary actions is not present in bankruptcy cases. *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988). "To delay resolution of discrete claims until after final approval of a reorganization plan, for example, would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan." *Id.* The Mondellis now seek not just a reappraisal of the confirmation plan but a reversal of over five years worth of orders, proceedings, and administration of the estate. Doing so would constitute a massive waste of time and resources for all parties involved, not to mention the Bankruptcy Court and this Court.

The Mondellis point to no authority allowing them to circumvent application of the clear rules of procedure and the resounding Third Circuit precedent on point, nor do they adequately respond to arguments raised by the Appellees regarding timeliness. Because only their appeal of the Final Decree was timely, the Mondellis' appeal is limited to the Final Decree.[2] This Court lacks subject matter jurisdiction over the other ten orders the Mondellis seek to appeal.[3]

---

[2] The Mondellis argue that some of the orders appealed from were not final until the Final Decree, although they fail to identify those orders. This Court previously dismissed Mondelli's interlocutory appeal of the October 17, 2007 Order which granted attorneys' fees to the Trustee's legal counsel on the grounds that Mondelli had failed to seek leave of the court to file the appeal. *Mondelli v. Delzotti*, No. 07-CV-5840 (D.N.J. May 2, 2008). But the issue of what fees would be allowed to Trustee's legal counsel was firmly decided on January 1, 2009, and that order – which the Bankruptcy Court noted was the third and final application for such fees – was likely final and appealable. As discussed above, Mondelli *did* appeal that order, although he failed to prosecute that appeal. In any event, the Mondellis fail to show how *any* of the orders they purport to appeal from were somehow not final until the Final Decree.

[3] The Appellees note that the Mondellis may have misidentified one of the orders they seek to appeal: though the Notice of Appeal lists the May 16, 2007 Consent Order, the Notice of Appeal also incorrectly identifies the May 16, 2007 as being "Bnkr. Docket No. 251." This docket number actually refers to another consent order entered into on June 27, 2007 and mentioned above in this opinion. To the extent the Mondellis intended to appeal the June 27, 2007 Order, the appeal as to that order would still be untimely for the reasons stated above.

### B. Standing to Appeal the Final Decree

The Appellees next argue that the Mondellis lack standing to appeal. Standing to appeal an order of a bankruptcy court is limited to persons aggrieved by that order. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). This standard is more restrictive than normal Article III standing. *Id.* at 215. The Mondellis must show that the order diminishes their property, increases their burdens, or impairs their rights. *Id*. at 214. "[O]nly those persons whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (internal quotation marks and citation omitted). Whether a litigant has standing to appeal a bankruptcy court order is ordinarily a question of fact to be resolved by the district court. *In re Fryer*, 235 F. App'x 951, 954 (3d Cir. June 11, 2007) (citing *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)).

The Final Decree orders only three things: that the Trustee be discharged, that the bond be terminated, and that Mondelli's bankruptcy case be closed. The Mondellis do not show how any of these three actions has a direct, pecuniary effect on them. The Mondellis argue that standing exists because the Trustee abandoned property to them and further that the bankruptcy proceedings diminished the value of that property. But, again, the Final Decree does not affect any abandonment nor does it order any other administration of the estate. Rather, it recognizes that the estate has been fully administered and orders necessary ministerial acts. While there may have been orders that *did* have a direct, pecuniary effect on the Mondellis' rights and interests in any real property, the Final Decree is not among them.

The Mondellis propose a number of issues to be addressed in the appeal, all of which revolve around alleged errors by the Bankruptcy Court.[4] But again, the Mondellis fail to show how any of these alleged failures implicates the Final Decree such that this Court could construe the Final Decree as aggrieving the Mondellis sufficiently to provide standing to appeal. Instead, each of these issues relates to another order or orders from the bankruptcy proceedings. If the

---

[4] These are: the Bankruptcy Court's alleged failure to consider Debtor's mental incapacity; the Bankruptcy Court's alleged failure to notify Anna Mondelli; the Bankruptcy Court's alleged error in allowing the Mondellis to enter into leasing agreements regarding the real property at issue in the case; the Bankruptcy Court's alleged failure to consider "the results accomplished" when awarding attorneys' fees and compensation to the Trustee; the Bankruptcy Court's alleged failure to require the Trustee to oversee the transactions leading to the consent orders appealed; the Bankruptcy Court allegedly awarding improper fees for service performed by the Trustee's attorneys; the Bankruptcy Court's alleged failure to consider the size of the estate when awarding compensation to the Trustee and his attorneys; and the Bankruptcy Court's alleged error in allowing the Mondellis to be rendered destitute.

Mondellis took issue with particular orders, they should have proceeded with timely appeals from those orders.

For the foregoing reasons, this Court must dismiss the appeal.

### III.   The Rule 11 Motion

#### A. The Legal Standard for Rule 11 Motions

Rule 11 provides that attorneys may be sanctioned if they, among other things, fail to make a reasonable inquiry into the legal legitimacy of a pleading. Fed. R. Civ. P. 11(b)(2) & (c); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). A district court must determine whether the attorney's conduct was objectively reasonable under the circumstances. *Id*. Sanctions are to be applied only "in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (citation omitted). It must not be a penalty against merely unsuccessful litigants, and it "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (citation omitted).

#### B. The Safe Harbor Provision

Although the Rule 11 Defendants have not challenged the motion on the grounds of procedural defect, the Court must take a moment to consider whether the Rule 11 Movants properly complied with the necessary procedure. Rule 11(c)(2) contains a safe-harbor provision requiring that parties that are about to file a Rule 11 motion should first serve – but not file – a copy of that motion on the parties moved against and then wait at least twenty-one days prior to filing the motion with the court. This creates an opportunity for the alleged violator to review his claims and withdraw or correct his filings as appropriate to avoid violating the rule. Here, rather than filing a copy of the motion with the Rule 11 Defendants, the Rule 11 Movants sent a letter (the "Rule 11 Notice" or the "Notice") to the Rule 11 Defendants on July 14, 2010, outlining *some* of their arguments that a violation had occurred, citing supporting case authority, and notifying the Rule 11 Defendants of their intent to file a motion for sanctions – including monetary sanctions – under the rule. While the Rule 11 Movants have substantially complied with the safe-harbor provision, the better practice is to serve the unfiled motion in its complete form on the alleged violator, as some courts do not recognize the substantial compliance exception. *Compare Nisenbaum v.*

*Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003) (holding defendants complied substantially with safe-harbor provision by sending notification letter) *and Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 480 n.27 (S.D.N.Y. 2003)(same) *with Perez y Cia. De Puerto Rico, Inc. v. C & O Brokerage*, 672 F. Supp. 2d 257, 260-61 (D.P.R. 2009) (citing cases holding letter insufficient to trigger beginning of safe harbor period). And, as discussed below, because the Notice fails to identify some of the Rule 11 Movants' arguments, this Court will not consider those omitted arguments even though they may be included in briefing accompanying the actual motion filed. Had the Rule 11 Movants provided the Rule 11 Defendants with a full copy of the unfiled motion, they could have avoided this outcome.

### C. The Alleged Rule 11 Violations

The Rule 11 Movants argue that the Mondellis' appeals are frivolous and unmeritorious because: (1) any appeal of the consent orders was untimely; (2) the two – or three – orders appealed from are non-appealable consent orders; (3) this Court will not consider issues raised for the first time on appeal; and (4) the orders were the subject of a prior unsuccessful appeal and further appeal is thus barred by the doctrine of *res judicata*.

As discussed above, the appeal of the consent orders was untimely. For the purposes of the Rule 11 Motion it is sufficient to note that the Mondellis' counsel failed to make a reasonable investigation into the existing law of bankruptcy proceedings and this Court's subject matter jurisdiction prior to bringing the appeal. While it shows a lack of legal diligence – or perhaps even a disregard for existing law – this alone might be insufficient for the Court to grant sanctions against an inexperienced attorney given the unusual nature of finality in bankruptcy proceedings. But at the time of the filing of this appeal, Rosellini had already been practicing in bankruptcy court in this proceeding for at least three years. And he had already brought numerous appeals to this Court and the Third Circuit Court of Appeals in this very case. Thus, I would not excuse him based on inexperience.

The Rule 11 Movants are also correct that Mondelli is precluded from appealing orders to which he has consented. The Third Circuit has held that "a party cannot appeal a consent judgment" unless one of three exceptions applies: (1) one or both parties failed to assent; (2) the ordering court lacked subject matter jurisdiction; or (3) the consent judgment explicitly reserves the right to appeal. *Verzilli v. Flexon, Inc.*, 295 F.3d 421, 424 (3d Cir. 2002).

None of the exceptions apply here. First, Mondelli assented to all three orders. While Mondelli allegedly has mental impairments that prevent him from operating *pro se*, Mondelli had legal representation when he assented to all three

8

orders. Both the May 15, 2007 Order and the May 16, 2007 Order were signed by Herbert Levenson on Mondelli's behalf. The June 27, 2007 Order was also signed by Levenson on Mondelli's behalf. The Mondellis have not argued that Levenson did not represent Mondelli in signing these orders. Second, the Mondellis do not argue that the Bankruptcy Court lacked subject matter jurisdiction to enter the challenged orders. Third, not one of these orders contains an explicit reservation of the right to appeal.

The existing law on this issue is clear, and neither the Mondellis nor the Rule 11 Defendants cite any contrary authority. I can only conclude that Rosellini failed to conduct a reasonable investigation into the existing law such that he missed unequivocal Third Circuit precedent barring appeal of consent orders except in specific circumstances.

But it would be unfair for this Court to order sanctions based on the remaining alleged Rule 11 violations, because the Rule 11 Movants failed to provide the Rule 11 Defendants with adequate notice. First, the Rule 11 Movants are correct that the longstanding rule is that "when a party fails to raise an issue before the bankruptcy court, the issue is waived and may not be considered by the district court on appeal." *In re Kaiser Group Intern. Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). But because they did not include this argument in their Sanctions Notice, the Court will not consider it in deciding the Rule 11 Motion.

Second, the Rule 11 Movants also argue that appeal of the consent orders is barred by the doctrine of *res judicata*. As discussed above, the Bankruptcy Court later enforced the consent orders with entry of an additional order, and that enforcing order was appealed by Mondelli to this Court, which dismissed his appeal; the Third Circuit Court of Appeals affirmed that dismissal. But again, the Rule 11 Movants did not adequately notify the Rule 11 Defendants that the doctrine of *res judicata* was a basis for their alleged Rule 11 violations. While the Rule 11 Notice states that the Consent Orders "were the subject of a previous appeal" and thus "[t]he Debtor cannot relitigate those issues," this is too vague to notify the Rule 11 Defendants of any legal basis for that argument. The Rule 11 Notice does not cite any authority in support of this statement, nor does it use explanatory terms such as *res judicata* or issue or claim preclusion. Out of an abundance of caution, this Court will not consider whether *res judicata* – or some other doctrine – bars appeal of the consent orders in considering whether Rule 11 was violated.

### D. Sanctions Against Rosellini

Rosellini has violated Rule 11(b)(2). Once a violation has been found, the district court has discretion to choose what sanctions are appropriate. *See Zuk v.*

9

*Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania*, 103 F.3d 294, 300 (3d Cir. 1996). In determining what sanctions are appropriate, a district court should order the "*minimum* that will serve to *adequately* deter the undesirable behavior" and should consider "whether the attorney has a history of this sort of behavior, the defendant's need for compensation, the degree of frivolousness, and the willfulness' of the violation." *Id*. at 301 (quotations and citations omitted).

Rosellini bears the brunt of the responsibility for any Rule 11 violations. He is the sole attorney who has filed any papers on the Mondellis' behalf in this appeal. On review of his filings, I can only come to the conclusion that Rosellini is willfully inept. This is not a case of a lawyer making creative yet unsuccessful arguments. Rosellini completely disregards the law, making arguments contrary to established precedent without providing any authority or logic explaining how his position is meritorious. He writes his briefs in an unorganized stream of consciousness and leaves it to his adversaries and the courts to divine what the legal foundations of his contentions might be.

This is not the first time Rosellini has brought an unmeritorious appeal before this Court on behalf of Mondelli. As discussed above, this Court dismissed one of Mondelli's previous appeals for failure to file a timely designation of the record and notice of issues on appeal as required by Federal Rule of Bankruptcy Procedure 8006. *See Mondelli*, 2008 WL 3843268, at *3. In so holding, the Court noted that "[i]n summary, Debtor's arguments appear largely without merit." *Id.* at *5. And the Court further held that Mondelli "has a history of dilatoriness and that [his] Rule 8006 violation was willful" and that Mondelli "appears fairly unconcerned with many procedural rules; for example, Debtor in his motion for reconsideration completely ignored rules regarding the appropriate substantive scope of such motions." *Id.* at *6. Again, Rosellini, acting on behalf of Mondelli, has made a filing claim based on arguments that are without merit and has completely ignored rules regarding the proper scope of a proceeding. Sanctions are necessary.

Rosellini deserves to be sanctioned. And some fees are warranted, as his legal work and the fact that this Court previously warned him against making arguments that lack legal merit suggest that he is not influenced by a court's words alone or by an order dismissing an appeal. Thus, an admonishment is insufficient. The Court will formally admonish Rosellini in its order and will further order Rosellini to pay a fine of $1500 to the Clerk of the Court as a monetary sanction. *Zuk*, 103 F.3d at 300-01 (noting that public interest remedies such as fine and reprimands are envisioned as "the norm" under 1993 revisions to Rule 11 and that monetary penalties under "should ordinarily be paid into the court") (quotations

and citations omitted). Given that Rosellini is a practitioner at a small firm, this fee should be sufficiently deterrent.

### E. Sanctions Against H&C

By H&C's admission, Rosellini acts as "of counsel" to H&C. H&C's name appeared on the notice of appeal Rosellini filed on March 29, 2010. Its name also appeared for a time under Rosellini's name on the docket report for the appeal. Because Rosellini had represented Mondelli in his capacity as of counsel to H&C throughout much of the bankruptcy proceedings, a rational observer would have the impression that Rosellini represented Mondelli in this appeal as part of his connection with H&C. As the Rule 11 Movants argue, this creates the possibility that H&C could be vicariously liable for Rosellini's Rule 11 violations.

Under Rule 11(c)(1), "absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *See also Brubaker Kitchens, Inc. v. Brown*, No. 05-6756, 2006 WL 3682180, at *7 n.13 (E.D. Pa. Dec. 11, 2006); *Gambello v. Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002). The Rule 11 Defendants do not argue that any exceptional circumstances exists that would excuse them from vicarious liability. Instead, they argue that Rule 11(c)(1) does not apply. In support, Pietra Cammarota, a partner with H&C, filed a certification on H&C's behalf.

First, H&C argues that Rule 11(c)(1) does not apply because Rosellini is not H&C's partner, associate, or employee, but is "of counsel" to the firm. H&C admits that Rosellini has represented clients – including Mondelli – on behalf of H&C, but insists that because of the nature of the of counsel relationship, it cannot be liable for Rosellini's Rule 11 violations. How is this possible? The Court does not know, because H&C does not explain it. H&C had the opportunity to make clear Rosellini's relationship with it, but did not. The Rule 11 Defendants have not provided any supporting documents or any evidence illustrating what its relationship with Rosellini is. The label "of counsel" is not some magic phrase that protects a law firm from Rule 11 sanctions when its employee has violated that rule. Based on the information before this Court, Rosellini is an employee of the firm or otherwise has a relationship with H&C that would trigger the application of Rule 11(c)(1).[5]

Second, H&C argues that, even if it could technically be liable for Rosellini's Rule 11 violations, it cannot be liable for filings made in the present

---

[5] Even if sanctions against H&C are not *compelled* by Rule 11(c)(1), that section still allows this Court to sanction H&C and its name partners as partly responsible parties. *See id.* ("the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation").

11

appeal because Rosellini represents the Mondellis in his individual capacity as opposed to his of counsel capacity. Thus, they argue, they have no attorney client relationship with the Mondellis and cannot be liable for any filing made on the Mondellis' behalf. But the evidence before the Court is not so clear.

Rosellini represented Mondelli in his of counsel capacity throughout much of the bankruptcy proceedings, and H&C does not deny that. H&C claims that it terminated its representation of Mondelli around January of 2009, well before the filing of this appeal. But it provides no documents, like engagement letters, termination letters, or even email communications, to support that claim. And the Rule 11 Defendants did not file a substitution of attorneys form with the Bankruptcy Court, where Mondelli's case was ongoing and Rosellini continued to actively file in his capacity as of counsel well after January of 2009.[6] And despite the fact that H&C claims never to have represented Anna Mondelli, the Notice of Appearance of Counsel on Behalf of Anna Mondelli, filed with the Bankruptcy Court on October 15, 2009, lists her attorney's address in two locations as "Kenneth Rosellini" of "Hallock & Cammorota, LLP."

The only documental evidence of H&C's withdrawal is the substitution of attorneys form filed with this Court. But even this is problematic for H&C. First, if the Court were to take the substitution form at face value, H&C were counsel for the Mondellis until well after the notice of appeal was filed. And the timing and circumstance of this substitution are highly suspect. The Rule 11 Movants sent the Rule 11 Notice to the Rule 11 Defendants on July 14, 2010. The Rule 11 Defendants filed the substitution form on July 20, 2010 – a mere six days later – in an obvious move to avoid vicarious liability.

The Court is not rejecting Cammarota's certification as not credible; the Court assumes that the certification is truthful. But Rosellini represented the Mondellis in his capacity as of counsel throughout this case, and when H&C's name appeared on the March 29, 2010 Notice of Appeal, a rational observer would conclude that Rosellini was still representing the Mondellis in his of counsel capacity. Given the unusual nature of Rosellini's representation of the Mondellis – first as part of H&C and later in his individual capacity – H&C had an obligation to ensure that its withdrawal from representation of Mondelli was known to this Court. H&C cannot hide behind its murky relationship with Rosellini and it cannot absolve itself of vicarious liability under Rule 11 by filing a belated substitution of attorneys. To allow as much would be to set a precedent whereby firms could

---

[6] This Court takes judicial notice of the bankruptcy docket and other filings that were not part of the designated record on appeal. *See, e.g.*, *U.S. v. Falcone*, 2010 WL 1372435, at *1 n.1 (D.N.J. Mar. 31, 2010) (holding court may take judicial notice of public records from other proceedings). Review of filings from the Bankruptcy Court after January of 2009 show Rosellini continuing to file documents on Mondelli's behalf while indicating that he was acting as part of H&C. For example, "Kenneth Rosellini, Esq. (6047) Hallock & Cammarota, LLP" appears at the very top of Mondelli's Objection to Attorney's Fees filed on February 17, 2010.

insulate themselves from Rule 11 liability by sacrificing the individual member or employee who signed the papers on the eve of the Rule 11 motion. That result would be an evisceration of Rule 11(c)(1).

     H&C, and its partners, Hallock and Cammarota, are jointly and severally liable for the $1500 sanctions fee.

  An appropriate order follows.

                                        /s/ William J. Martini  
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 29, 2011.**